# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                      CRIMINAL ACTION NO. 2:09-cr-00222-30

WILLIAM HANKINS, SR.,

                Defendant..

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant William Hankins, Sr.'s Motion to Withdrawal Guilty Plea [Docket 1606], which was filed on April 30, 2010.  For the following reasons, Defendant's motion is **GRANTED**.

### I. INTRODUCTION

Defendant pled guilty on October 27, 2009, to Count Twelve of the original indictment, which charged him with interstate travel in aid of a racketeering enterprise in violation of 18 U.S.C. § 1952(a)(1) and § 2.  A stipulation of facts was attached to Defendant's plea agreement for the purpose of establishing the factual basis for the offense.  The racketeering activity alleged in the indictment and stipulation is an annual raffle conducted by the Pagans Motorcycle Club (PMC), which the Government contends amounts to an illegal gambling activity.[1]  The Court found a factual basis for

---

[1]  Although Defendant signed the stipulation of facts attached to the October 27, 2009, plea agreement and thereby concurred with the Government's allegation on this point, it is clear from his memoranda that Defendant does not agree with the Government that the PMC raffle amounts to an illegal gambling activity sufficient to obtain a conviction.

Defendant's guilty plea at the October 27, 2009, plea hearing.  Accordingly, Defendant's guilty plea was accepted, but the Court deferred adjudging Defendant guilty until the time of his sentencing.

Defendant filed the pending motion to withdraw from his guilty plea on April 30, 2010.  The Court heard oral argument on the motion on May 5, 2010.  Thereafter, the Court undertook a review of the factual basis for this offense.[2]  In its August 24, 2010, memorandum opinion, the Court found an insufficient factual basis for Defendant's guilty plea.  Thereafter, the Court held a second hearing on Defendant's pending motion to withdraw his guilty plea.  During that hearing, the Court expressed its hesitance to proceed to sentencing in this case because of its highly adversarial nature at this juncture.  Following that hearing, the Court directed both parties to file memoranda on the pending motion, specifically addressing the factors enunciated in *United States v. Moore*, 931 F.2d 245 (4th Cir. 1991).  Those factors and the Court's analysis are set forth below.

## II. LEGAL STANDARD

Fed. R. Crim. P. 11(d)(2)(B) provides, in pertinent part, that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  However, a defendant does not have an absolute right to withdraw a guilty plea, even before sentencing.  *Moore*, 931 F.2d at 248.  Rather, the defendant bears the burden of demonstrating that a fair and just reason supports his request to withdraw his plea.  *Id*.  A fair and just reason is "one that 'essentially challenges . . . the fairness of the Rule 11 proceeding.'"  *United States v. Puckett*, 61 F.3d 1092, 1099 (4th Cir. 1995) (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992)).

---

[2]  This review was part of a larger effort to review the factual bases regarding numerous related cases.  *See United States v. Barbeito*, 2:09-cr-222, 2010 WL 2243878,  2010 U.S. Dist. LEXIS 55688 (S.D. W. Va. June 3, 2010)

In deciding whether to permit a defendant to withdraw his guilty plea, the district court considers

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether the defendant has had the close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether withdrawal will inconvenience the court and waste judicial resources.

*Moore*, 931 F.2d at 248.  Although all six *Moore* factors must be given appropriate weight, they are not necessarily to be weighed equally by the district court.  *See United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995).  Instead, the district court enjoys significant latitude in weighing the *Moore* factors in light of a defendant's specific set of circumstances.  *See id.* at 1154 & n.5 (stating that the *Moore* factors "call for qualitative judgments, not binary ones" and that *Moore* "did not purport to set forth a rigidly mechanistic test, for the conspicuous fuzziness of Rule 32(d)'s operative terms—'fair and just'—precludes such an endeavor.").

### III. DISCUSSION

*A. Whether Defendant has offered credible evidence that the plea was not knowing and voluntary*

Defendant first argues that his plea was not truly knowing or voluntary because, at the time of entering his plea, he was unaware that the Government would dismiss identical charges against similarly situated defendants.  When analyzing this factor, the Court "must assess whether the Rule 11 colloquy was properly conducted and the plea was both counseled and voluntary."  *Id.* (citing *United States v. Bowman*, 348 F.3d 408, 413-14 (4th Cir. 2003)).  A defendant has entered a guilty plea intelligently when he is "advised by competent counsel . . . [, he is] made aware of the charge

against him, and there was nothing to indicate he was incompetent or otherwise not in control of his mental faculties." *Brady v. United States*, 397 U.S. 742, 748 (1970).

The Rule 11 colloquy is specifically designed to protect a defendant against an uninformed and involuntary plea. *Bowman*, 348 F.3d at 417. The Court "is entitled to rely on the defendant's statements made under oath to accept a guilty plea." *Id.* at 417. At the plea hearing, the Court reviewed with Defendant all of the material components of the guilty plea, and Defendant represented to the Court that he both understood and acquiesced. The Court also specifically asked Defendant whether his plea was submitted voluntarily and of his own free will, and Defendant answered in the affirmative.

Here, Defendant suggests that his plea was not intelligently made because he had no knowledge that the Government would dismiss the charges against similarly situated co-defendants. In making this argument, Defendant points out, and the Court notes with confusion, that Mr. Hankins has been treated in a highly disparate manner by the Government. While others charged in Count Twelve of the original indictment were dismissed in exchange for pleading guilty to a misdemeanor in state court, the Government has relentlessly persisted in Defendant's prosecution.[3] Nonetheless, the exercise of the Government's prosecutorial discretion in dismissing the federal charges against certain co-defendants does not render Defendant's plea unknowing, unintelligent, or involuntary. The first *Moore* factor is concerned with assessing a defendant's competence and comprehension during the plea colloquy, not whether Defendant was aware of every contingency in his case when he entered the plea agreement. This factor militates against withdrawal.

---

[3] The Court notes the irony that Defendant was the first of all 56 defendants in this case to enter a guilty plea.

*B. Whether Defendant has credibly asserted his legal innocence*

Defendant forcefully asserts that he is both factually and legally innocent on multiple grounds. As the Court noted in its August 24, 2010, memorandum opinion, the stipulation of facts contains scant details about Defendant's role in the 2008 raffle.  Defendant now alleges, and the stipulation of facts does not negate, that the 2008 raffle was a fraud perpetrated by PMC leaders Floyd Moore and David Barbeito.  More specifically, Defendant contends that there was no motorcycle to win from participating in the 2008 raffle, an argument that would remove the raffle from the technical definition of a "lottery" in at least some of the jurisdictions charged.[4]  *See, e.g.*, *Commonwealth v. Lane*, 363 A.2d 1271, 1272 (Pa. Super. Ct. 1976) (citing *Commonwealth v. Logan*, 94 A.2d 99 (1953)) (basic elements of a lottery are a prize to be won, a winner to be determined by chance, and the payment of consideration by the player).  The crux of this argument, which the Government ignores, is that pursuant to some states' gambling laws, in order to be a "lottery" or "raffle" in the first place, a prize to be won by chance must exist.  If the individuals involved in the raffle understood it to be a sham, and therefore acknowledged that there was no prize, the raffle fails to be a gambling activity, much less an *unlawful* gambling activity, and it cannot underpin a Travel Act conviction.  Furthermore, even if it is assumed that Defendant was transporting the proceeds of raffle tickets sold to or by others, it cannot be said that Defendant was transporting the proceeds of unlawful

---

[4]  The Government retorts that, regardless of whether Defendant bought or sold anything, he is subject to federal prosecution for transporting the proceeds of an illegal raffle.  This argument fails to address the requirement that the raffle be illegal under state laws, which typically proscribe the establishment and operation of an unlicensed lottery.  The definition of "lottery" is often supplied by state law or cases interpreting state law.  As such, the realm of conduct prohibited by state gambling laws is limited to activity meeting the definition of a "lottery."  If the 2008 PMC raffle was not a "lottery" under state law, then, it is not an illegal gambling activity, and it cannot provide the basis for a Travel Act prosecution.

gambling unless it is first determined that the selling of raffle tickets was in violation of the laws of the state in which they were sold.  For instance, if each PMC member in the New Jersey chapters bought his own tickets, no illegal conduct occurred under New Jersey state law.  *See* N.J. Stat. Ann. § 2C:37-2(c) (exempting gamblers or players from law proscribing gambling).

Defendant further argues that he did not transport proceeds gathered from the Long Island, New York, New Jersey, and Philadelphia, Pennsylvania PMC chapters, as the Government contends. Instead, Defendant argues that he delivered only the proceeds from his own PMC chapter in Camden County, New Jersey to Michael Sneed in St. Albans, West Virginia.  By defining the geographic scope as well as the range of participants more narrowly, Defendant raises significant questions about his legal guilt.  The Court notes that the Government has attached nearly 150 pages of ticket stubs to its memorandum, apparently as evidence that Defendant transported proceeds acquired throughout New York, New Jersey, and Pennsylvania.  However, the majority of the ticket stubs contain no address, and others include Florida, Tennessee, and Delaware addresses.  The Court is unable to draw a coherent inference from this attachment, and the only apparent conclusion is that the Government intends to submit witness testimony and evidentiary exhibits to demonstrate the factual basis.[5]

The Court concludes that, at least on these two grounds, Defendant has credibly asserted his legal innocence.

---

[5] This conclusion is relevant to the sixth *Moore* factor, which pertains to the expenditure of judicial resources.  If a substantial evidentiary hearing will be required to establish the factual basis underlying Defendant's guilty plea, judicial resources will not be wasted by instead pursuing a full-blown trial.

*C. Whether there has been a delay between the entering of the plea and the filing of the motion*

As previously stated, Defendant entered the plea agreement on October 27, 2009.  He first moved the Court for leave to withdraw his guilty plea on April 23, 2010, nearly six months after his plea.  A six-month delay is considerable.  *See United States v. Massenburg*, No. 09-4172, 2010 WL 2465287, at *2 (4th Cir. June 18, 2010) (two-month delay is not unreasonable); *United States v. Cline*, 286 F. App'x 817, 822 (4th Cir. 2008) (three-month delay is significant); *Bowman*, 348 F.3d at 415-16 (delay of three months not too long); *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993) (six months is a considerable delay); *Moore*, 931 F.2d at 248 (six-week delay too long).

Defendant argues that a portion of that six-month period was spent waiting for the Government to offer dismissal, as it had done for other co-defendants.  As such, argues Defendant, that portion of the six-month period should be discounted from the Court's consideration of this factor.  According to Defendant's memoranda, he first learned of the state-court deals in similar cases when the first dismissal was docketed in co-defendant Rocco Boyd's case.  That dismissal was docketed on March 23, 2010, exactly one month before Defendant filed his motion to withdraw.  Even accepting Defendant's argument, then, he waited five months to file the motion to withdraw his guilty plea.  Guided by the Fourth Circuit analysis enumerated above, the Court concludes that five months is still a significant delay.

*D. Whether Defendant has had the close assistance of competent counsel*

Defendant asserts that he was denied the close assistance of competent counsel because his attorney did not advise against entering the plea agreement in October of 2009.  Further, Defendant argues that he was under duress from the Government's investigation.

7

As a general rule, a defendant asserting that he did not receive close assistance of counsel must demonstrate "'(1) that his counsel's performance fell below an objective standard of reasonableness and (2) that there [was] a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" *Bowman*, 348 F.3d at 416 (quoting *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989)) (alteration in original) (internal quotation marks and citations omitted).  This standard is derived from the test for ineffective assistance of counsel.  *See DeFreitas*, 865 F.2d at 82 (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985)).  The district court's inquiry is limited to whether Defendant's attorney "was reasonable 'under the prevailing professional norms,' and in light of the circumstances."  *See Bowman*, 348 F.3d at 416 (quoting *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002)).

Quite simply, Defendant has offered no credible evidence in support of the proposition that an error made by his former counsel directly resulted in his guilty plea.  Defendant's assertions on this point amount to second-guessing the defense strategy employed in October 2009.  At no time does Defendant identify a specific mistake or oversight by his attorney, instead simply stating that Defendant's "counsel refrained from [impeding the agreement] even against his own better judgment." (Docket 2267 at 6.)  Indeed, the Court would note that if Defendant and his counsel had not proceeded with pleading guilty so early, and if they had waited a few months, as others did, it is likely Defendant would not have pled guilty.  While there is perhaps an argument to be made that Defendant's attorney failed to fully investigate the charges and underlying facts prior to entry of Defendant's plea agreement, nothing rising to ineffective assistance of counsel is apparent to the Court.  Furthermore, even if Defendant's complaints were enough to meet the standard articulated above, the fact remains that this position is in direct contradiction with the statements Defendant

made during his Rule 11 colloquy.  At that time, Defendant asserted that he had discussed the plea agreement in detail with his attorney, that he had adequate time to discuss the case fully with his attorney, and that his attorney had answered all of his questions.  Defendant also agreed that his attorney had  not left anything undone in his case and maintained that his plea was freely and voluntarily given.  This *Moore* factor weighs against withdrawal.

### E. Whether withdrawal will cause prejudice to the government

In order to show prejudice, the Government may not simply "rely[] on the costs that would inevitably attend the trial of a particular case even in the absence of a withdrawn guilty plea." *United States v. Faris*, 388 F.3d 452, 459 (4th Cir. 2004), *sentence vacated on other grounds*, 544 U.S. 916 (2005) (citing *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004)).  Rather, "the Government must identify some costs specifically resulting from the entry and subsequent withdrawal of the plea." *Id.* at 459-60 (citing *United States v. Morrison*, 967 F.2d 264, 269 (8th Cir. 1992)).  Here, the Government has argued that many of the cases charged in the indictment have since been resolved, and as such, the Government would be prejudiced in trying Defendant at such a late date.  However, at the September 7, 2010, hearing, when asked how best to resolve the Court's concerns regarding the factual basis for Defendant's guilty plea, the Government indicated that it was fully prepared to proceed to sentencing, where it would put on witnesses and introduce evidence sufficient to establish the factual basis for the charge.  At that time, the Court observed that such an extensive, adversarial proceeding would very nearly approach a full-blown trial.  That observation remains, and it is unclear to the Court what additional prejudice to the Government would result from allowing Defendant to withdraw his plea and proceeding to trial.  The Government does not argue that evidence has been lost or damaged or that witnesses are now unavailable.  Instead, the Government baldly asserts that

"[t]he obvious prejudice of going to trial at this late date, after numerous other charging decisions, plea hearings, trials, and sentencings have occurred, is clear and substantial."  (Docket 2307 at 9.) As such, the fifth *Moore* factor provides no obstacle to Defendant's withdrawal.

> *F. Whether withdrawal will inconvenience the court and waste judicial resources*

When considering inconvenience and the waste of judicial resources, a court should not place much weight on the costs of the "routine requirements" that arise in most criminal cases. *Id.* at 460. However, a court may consider whether a defendant has a "legitimate interest in withdrawing his guilty plea to test the possibility of acquittal at trial." *Id.*  The plea deals struck between the Government and other co-defendants in this case, along with the newly identified theories of factual and legal innocence, indicate to the Court that Defendant has a legitimate interest in testing the possibility of acquittal by putting the Government to its burden.  Furthermore, while the Government correctly argues that allowing a withdrawal in this case will likely necessitate a trial, many of the judicial resources expended in that trial would otherwise be spent in a lengthy and complex sentencing, which the parties agree is inevitable because this case has resumed an adversarial posture. Moreover, considering the significant judicial resources the Court has had to devote to routine proceedings in this and other cases charged in these indictments, it is anything but certain that the case would otherwise "be resolved in a sentencing hearing that takes less than one hour," as the Government argues.  (Docket 2307 at 9.) Thus, the Court concludes that no additional inconvenience or waste of judicial resources is likely to result from allowing Defendant's withdrawal.

## IV. CONCLUSION

An analysis of the six *Moore* factors reveals that three weigh in favor of permitting Defendant's withdrawal and three weigh against it.  However, the lack of a sufficient factual basis

in the stipulation of facts or elsewhere combined with legitimate doubt about Defendant's legal guilt on the record as it stands, weigh heavily in the Court's analysis.

Perhaps most significantly, the Court is unwilling to have an adversarial proceeding in order to determine whether a factual basis exists.  It is clear that the parties are not prepared to agree on any further facts.  Yet, further facts are needed to support this guilty plea.  It seems odd, if not totally incongruous, to have an adversarial hearing to determine a factual basis for a guilty plea, which by its nature should include a concession to the necessary facts by a defendant.

On balance, Defendant has presented a "fair and just reason" for withdrawal of his plea.  Fed. R. Crim. P. 11(d)(2)(B); *see also Moore*, 931 F.2d at 248. As such, the Court **GRANTS** Defendant's Motion to Withdrawal his Guilty Plea  [Docket 1606].  A trial date will be set by separate order.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        November 8, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE